391

LEHMAN CO. OF AMERICA, Inc., v.

KROLL BROS. CO.

No. 8231.

Circuit Court of Appeals, Seventh Circuit.

Jan. 5, 1944.

Raymond L. Greist and F. Allan Minne, both of Chicago, Ill., for appellant.

Clarence E. Threedy, of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

Appellant charged appellee with the infringement of claim 3[1] of United States patent No. 1,724,569 to Elliott. The patent was issued August 13, 1929, on an application filed November 18, 1927, and afterwards assigned to appellant. The defenses were invalidity and non-infringement. The District Court held the claim invalid and did not pass upon the question of infringement. From that decree this appeal is prosecuted.

The invention relates to improvements in a child's high chair, and especially to improvements on the tray and facilities for holding the child in the chair. The specification noted that the chairs of the prior art were objectionable for the following reasons: The tray support was not adjustable for the growth of the child; in most chairs the tray or tray support swung on a horizontal axis, and was difficult to swing over the child's head, and often the child could tip the tray and its contents by swinging the tray support upward, and such chairs permitted the child to slip down between the tray and the seat, and thus fall out of the chair. Elliott's object was to cure those defects by providing in such structure an adjustable tray having slidable relation with the arms of the chair and adapted to be easily removed from the chair or attached thereto and utilized to carry food to the child.

The chair comprises a seat supported on a plurality of legs, preferably having their lower ends spread well apart. The concave back is inclined at a slight angle to the vertical and is connected with the rear ends of a pair of spaced parallel arms. The arms are preferably horizontal and have straight upper portions of T-shaped cross section, the stem of the T being provided with outturned flanges extending paralled to and spaced a relatively short distance from the lower edge of the T head portion. Spaced attachment lugs or ears may depend from flanges and may be secured to the upper ends of the vertical rungs, the rungs being mortised at their lower ends in the edges of the chair seat. The inside edges of the arms are provided on the under side with a series of teeth which are inclined rearwardly.

The tray includes the food holding portion, the sides of which are preferably hollow and open ended, being of substantially rectangular cross section, and of such proportion as to slide easily over the parallel

3. "In a chair having spaced arms provided with substantially parallel forward portions, a removable tray having parallel side members, said side members comprising elongated channels adapted to have telescopic relation with said arms, and inturned retaining portions at the bottom of said channels adapted to engage the bottoms of said chair arms, a series of spaced detents, such as teeth, on one of the longitudinal edges of one of said arms and a pawl mounted on the corresponding longitudinal edge of one of said tray sides, said pawl being adapted to interlock with said teeth to retain said tray on said arms in a desired position."

arms. A central elongated slot is formed at the bottom of each arm extending from the open end thereof forwardly for some distance and disposed longitudinally of said arm. This slot accommodates the stem portion of the T-shaped arm, while the under surface of the tray sides at the outer portions bear against the flanges, thus preventing the upper surface of the arms from becoming marred due to engagement with the under surface of the tray. Relatively small recesses are formed through the lower portions of the sides of the tray adjacent the rear ends, being substantially aligned with the teeth carried by the arms. A spring pressed pawl is pivotally mounted beneath the sides of the tray having its engagement end working through the recesses above referred to and yieldingly held in engagement with the teeth to lock the tray to the arms of the chair against withdrawal. The tray may be pushed rearwardly against the body of the child without requiring manipulation of the pawl, but without such manipulation it cannot be moved outwardly. Stop screws may be threadedly secured in different positions to the outer edges of the tray sides to adjustably limit its inward movement.

A pair of depending posts are rigidly supported from the under side of the tray preferably adjacent to its sides, and upon those posts a tubular U-shaped guard is adjustably supported. This guard comprises a substantially horizontal portion having upturned tubular ends telescoping over the posts. Set screws, adapted to be set against the posts, are used to secure the guard at a desired height. To withdraw the tray it is necessary to press the handles of the pawls. The guard above referred to may be adjusted and set at various levels, and its purpose is to prevent the child from sliding between the tray and the side, or from standing on the seat.

In a modified form of invention the shorter abutment surfaces of the teeth are disposed at an incline to the vertical, thus preventing disengagement of the tray from the arms until the tray has been moved slightly rearwardly.

The District Court thought that claim 3 did not show invention and that it was anticipated by the prior art, some of which we shall mention. The Henrichs patent, No. 134,668, was issued in 1873. It discloses a baby's chair with an adjustable and detachable table which fits over and travels on the elongated arms of the chair, and which, through a spring bolt or latch, is automatically latched upon the arms in any desired position. It has spaced arms provided with parallel forward portions, and a removable tray having parallel side members which comprise elongated channels, adapted to have telescopic relation with guide members mounted on the outside of the chair arms. The side walls of the channels engage the bottoms of the guide members to prevent the tilting or tipping of the tray and to guide the tray in its adjustment upon the arms. A series of spaced detents in the form of openings are formed in the bottom of the tray, and a pawl is carried by a cross bar which connects the outer ends of the arms. This is adapted to interlock with the openings in the bottom of the tray to retain it on the arms in the desired position.

The Snideman patent, No. 1,021,901, was issued in 1912, and discloses a child's high chair having arms provided with parallel forward portions adapted to telescopically receive a removable tray having parallel side members comprising elongated channels adapted to have telescopic relation with the parallel forward portions of the arms, and having at their bottoms inturned retaining portions adapted to engage the bottoms of the chair arms, the tray being latched in position by a detent and pawl on the under side of the top of the channel, which engages a hole in the outer end of the extended arm.

The Shaver patent, No. 1,256,936, issued in 1918, has spaced arms provided with parallel forward portions; a removable tray having parallel side members comprising elongated channels provided by spaced cleats adapted to telescope over the chair arms; a series of detents on the inner longitudinal edges of the arms, and pawls mounted on the corresponding longitudinal sides of the tray, adapted to interlock with the detents to retain the tray in the desired position on the arms.

The Martin patent, No. 1,675,985, issued in 1928, has spaced arms provided with parallel forward portions, metal guideways on the inner side of each arm, each of which comprises a vertical web, and horizontal flanges or side walls. In each web are formed spaced detents. Depending flanges are provided on the opposite sides of a removable and adjustable tray. These flanges are slidably mounted in the metal guideways. On the under side of the tray

are provided pawls adapted to engage the detents to hold the tray in the desired position on the arms.

We deem it unnecessary to describe with particularity more of the prior art presented to the District Court. It includes the catalog of Heywood-Wakefield, published in 1924, and the following patents: Snideman, No. 1,182,938; Platts, No. 1,-383,020; Hallman, No. 1,486,813; Hay, No. 1,493,036; and Lehman, No. 1,571,846. It is sufficient to say that all the elements or advantages disclosed by Elliott are found in one or more of the patents and the catalog to which we have referred. It is quite true that they are not all shown in combination, as in Elliott, except perhaps in the patent to Henrichs. The latter we think anticipates everything in the nature of inventive genius that Elliott disclosed. Moreover, we are convinced that every element disclosed by Elliott performs precisely the same function in his combination as it did in the prior art we have mentioned, and nothing more, and no new result is obtained by the combination.

Appellant stresses its commercial success more particularly. However, that success was due to the sale of its commercial chair referred to as Babyguard High Chair, but that chair bears the markings of other pending patents and also two other patents besides Elliott. If claim 3 is given a broad construction it will read upon appellee's commercial chair. However, the same latitude in construction will read upon Henrichs.

■ This evidence discloses that the Elliott chair differs greatly in detail from the Babyguard chair, and on the Elliott chair appellant had no commercial success to speak of until the Babyguard chair was placed on the market. From this fact we are not convinced that appellant's commercial success was caused by the sale of the Elliott disclosure alone. We think the District Court ruled correctly in holding the Elliott patent invalid for lack of invention.

■ Furthermore, we are convinced that appellee's structure does not infringe the Elliott patent, if valid. Like Elliott and Snideman it has no channels upon the ends of the tray, having a telescopic relation with the arms. Its channels are disposed upon the bottom of the tray and telescope upon guide shoulders secured on the outer side of the arms, as in Henrichs. Appellee's metal guard shoulders have detents which engage the pawl located upon the metal channel which telescopes upon the guard shoulders. In other words, in both Elliott and Lehman, the pawl and the detents are on the inner side of the chair arm, while in Henrichs and the accused device, the pawl and detents operate on the outer side of the chair arm. We realize that ordinarily the change in location of an element is not sufficient to avoid infringement, but where invention depends upon the particular location of an element, any material variation from that location will be sufficient to avoid infringement. Furthermore, the accused structure follows the disclosures of Henrichs, Snideman, Shaver and Martin, and we think it cannot be said to infringe Elliott. If it infringes Elliott, then Elliott infringes Henrichs.

Decree affirmed.